## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

JULIE FREEMAN                                                    PLAINTIFF

V.                        CASE NO. 4:25-CV-00939 KGB-JTK

SOCIAL SECURITY ADMINISTRATION                         DEFENDANT

## RECOMMENDED DISPOSITION

### I.    Procedures for filing Objections:

This Recommended Disposition ("Recommendation") has been sent to United States Chief District Judge Kristine G. Baker. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Chief Judge Baker can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

### II.    Introduction:

Plaintiff, Julie Freeman ("Freeman"), filed an application for Title II disability benefits on July 22, 2022. (Tr. at 16). In the application, she alleged that her disability began on June 1, 2022. *Id*. The application was denied initially and upon

1

reconsideration. *Id*. After conducting a hearing, an Administrative Law Judge ("ALJ") found that Freeman was not disabled. (Tr. at 16-33). The Appeals Council denied Freeman's request for review of the hearing decision. (Tr. at 1-5). The ALJ's decision now stands as the final decision of the Commissioner, and Freeman has requested judicial review. For the reasons stated below, the Court should affirm the decision of the Commissioner.

## III.    <u>The Commissioner's Decision</u>:

Freeman meets the insured status requirements of the Social Security Act through December 31, 2026. (Tr. at 18). The ALJ determined that Freeman engaged in substantial gainful activity during the following period: June 1, 2022 to July 15, 2022. *Id*. However, there has been a continuous 12-month period during which Freeman did not engage in substantial gainful activity.[1] *Id*. The ALJ found, at Step Two, that Freeman has the following severe impairments: depression, anxiety, post-traumatic stress disorder, seizure disorder and thrombocytopenia with myeloproliferative disease. (Tr. at 19).

The ALJ determined that Freeman did not have an impairment or combination

---

[1] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

of impairments that met or medically equaled a Listed Impairment.[2] (Tr. at 19-21). Next, the ALJ found that Freeman had the residual functional capacity ("RFC") to perform work at the light exertional level with the following additional limitations: (1) should avoid even moderate exposure to hazards such as machinery with moving mechanical parts and unprotected heights; (2) can perform simple tasks with detailed but not complex instructions; (3) can occasionally interact with the public, coworkers, and supervisors; (4) must work at a facility with a restroom and would need two additional unscheduled five-minute bathroom breaks during the workday due to side effects from medication.[3] (Tr. at 21).

The ALJ determined that Freeman was unable to perform any past relevant work. (Tr. at 32). Relying upon testimony from a vocational expert ("VE"), the ALJ found that, considering Freeman's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Freeman could perform. (Tr. at 32-33). Therefore, the ALJ concluded that Freeman was not disabled. *Id*.

## IV. **Discussion:**

### A. Standard of Review

---

[2] See 20 C.F.R. Part 404, Subpart P Appendix 1: "Adult Listing of Impairments."

[3] Light work is defined as being able to occasionally lift twenty pounds and frequently lift ten pounds as well as being able to sit for a total of six hours in an eight-hour workday and stand and/or walk for a total of six hours in an eight-hour workday. *Id*.; 20 C.F.R. § 404.1567.

3

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*

4

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole, which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

### B.    Freeman's Arguments on Appeal

Freeman contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. She argues that: (1) the ALJ did not properly evaluate medical statements from Timothy Spurlin, APRN, and David Oberlander, M.D.; (2) the mental RFC did not capture all of Freeman's limitations; and (3) the ALJ failed to conduct a function-by-function analysis when creating the RFC.

### 1.    **Statements of APRN Spurlin and Dr. Oberlander[4]**

Freeman treated her mental conditions with counseling from APRN Spurlin. After Freeman began treating, Spurlin noted improvement and he observed that she presented with normal eye contact, no memory impairment, and normal attention

---

[4] The ALJ must "evaluate the persuasiveness of medical opinions by considering (1) whether they are supported by objective medical evidence, (2) whether they are consistent with other medical sources, (3) the relationship that the source has with the claimant, (4) the source's specialization, and (5) any other relevant factors." *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)). However, "[t]he first two factors—supportability and consistency—are the most important." *Id.* (citing 20 C.F.R. § 404.1520c(a)). Pursuant to the regulations, "treating physicians are [no longer] entitled to special deference." *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022)   (citing 20 C.F.R. § 404.1520c(a)). Statements that suggest a claimant is disabled are not medical opinions, and the determination of disability is an issue reserved to the Commissioner. See 20 C.F.R. § 404.1513(a)(2), 404.1520b(c)(3)(i).

and judgment. (Tr. at 24, 726, 1317, 1380-1394). At one appointment, Freeman told Spurlin that she was feeling improved mentally and that she could do things like perform spring cleaning, go fishing, camp, haul wood, and spend time with family.[5] (Tr. at 24-25, 1379-1383). Still, APRN Spurlin wrote in August 2023 that "maintaining concentration and carrying out instructions may be difficult or impossible related to anxiety and dissociation." (Tr. at 790).

The ALJ discussed the statement from APRN Spurlin and discounted the statement because Spurlin's own notes did not support it. (Tr. at 29). The ALJ referenced improvement in symptoms and generally normal mental status examinations. *Id*. Indeed, Dr. David Oberlander, a neurologist, treated Freeman's seizure disorder conservatively with medication, and he also noted that Freeman had normal mental status, with intact remote memory, normal speech, and intact attention span and concentration. Normal clinical findings do not support a finding of disability.[6]

Even though Dr. Oberlander's exams routinely showed no abnormalities and Freeman responded well to seizure treatment, he wrote that Freeman is "completely

---

[5] Such daily activities undermine her claims of disability. *Andrews v. Colvin*, 791 F.3d 923, 929 (8th Cir. 2015).

[6] *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

disabled from the neurological standpoint." (Tr. at 1506). She did have seizures, but the medical records show that they were not as frequent as Freeman alleged, and, in any event, the ALJ assigned an RFC with seizure hazard precautions. (Tr. at 21). Dr. Oberlander's statement that Freeman is disabled is a statement reserved for the Commissioner.[7] The ALJ may consider such statements, but she need not rely on them.

The ALJ did explain that APRN Spurlin and Dr. Oberlander's vague statements were not consistent with the record or supported by their own treatment notes. (Tr. at 29). Expanding on that, the ALJ distinguished the statements that Freeman was severely impacted by mental conditions with a record showing ability to perform daily activities and improvement with conservative treatment. The ALJ's treatment of the two statements was sufficient.

### 2. RFC mental limitations[8]

The ALJ found moderate limitations in Freeman's ability to interact with

---

[7] *Stormo v. Barnhart*, 377 F.3d 801, 805 (8th Cir. 2004).

[8] A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). An ALJ is not required to include limitations in the RFC that are not supported by the evidence in the record. *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003).

others and to concentrate, persist, and maintain pace at Steps Two and Three of the analysis. (Tr. at 18-23). Freeman asserts that this should have equated to more specific and stringent limitations in the RFC mental portion.

The ALJ did limit Freeman mentally; to simple work, with occasional interpersonal interactions. (Tr. at 21). The Eighth Circuit grants deference to the ALJ's RFC determination, being clear that she is not bound to use verbatim the language from any other part of the record analysis in the RFC.[9] Each step of the analysis is discrete and serves a certain purpose.[10] The RFC and the decisions at Steps Four and Five need not mirror the ALJ's conclusions at Steps Two and Three. Moreover, throughout the ALJ's decision, she gave good reasons for her RFC findings. (Tr. at 22-28). In spite of general improvement in mental conditions and positive response to conservative treatment, the ALJ did limit Freeman to simple work in the RFC. (Tr. at 21). This shows he believed some of her subjective testimony and factored in all of the impairments that she found to be severe at Step Two. The Court finds that the ALJ did not err with respect to the mental RFC.

---

[9] *See Newton v. Chater*, 92 F.3d 688, 695 (8th Cir.1996); *Brachtel v. Apfel*, 132 F.3d. at 417, 421 (8th Cir. 1997).

[10] *See Chismarich v. Berryhill*, 888 F.3d 978 (8th Cir. 2018) (ALJ's findings at various steps of the analysis are consistent if the decision harmonizes them).

### 3. **Function-by-function analysis**

Freeman contends the Social Security Ruling 96-8p requires the ALJ to conduct and articulate a function-by-function analysis in crafting the RFC. 1996 WL 374184, at *7. The Court again refers to the deference given to ALJ's in arriving at the RFC. [11] Moreover, SSR 96-8p does not prescribe a function-by-function analysis, instead allowing the ALJ to fulfill her duty by supporting her conclusions throughout his decision. *Id*.; *Shakespear v. Astrue*, No. 3:10-CV000176-BSM 2011 WL 4479252, at *5 *E.D. Ark. Sept. 28 2011). If the balance of the record supports his decision, the Court will decline to reweigh or reinterpret every fact or opinion before the ALJ.[12]

Freeman tries to rewrite the RFC to fit her contentions of disability, harping on specific words she claims were necessary for a proper RFC. The ALJ here explained fully her RFC findings, which were supported by the medical record. The Court declines to rewrite the RFC at a granular level.

---

[11] The RFC assessment is ultimately an administrative determination reserved to the [SSA]. *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007).

[12] The ALJ discussed Freeman's physical impairments, but found that conservative treatment improved her conditions and that physical examinations were generally normal. (Tr. at 23-28). Cancer and her seizure disorder were both well-controlled with medication. *Id*. And the ALJ noted her ability to perform a wide range of daily activities. *Id*. The ALJ also incorporated the state-agency medical expert opinions, which also found that Freeman was capable of light work with hazard precautions. (Tr. at 29).

## V.   **<u>Conclusion</u>:**

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ properly evaluated statements from providers and the RFC fully incorporated Freeman's limitations. The finding that Freeman was not disabled within the meaning of the Social Security Act, therefore, should be affirmed. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 21st day of May, 2026.

_____
UNITED STATES MAGISTRATE JUDGE