**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**JULIE FREEMAN** **PLAINTIFF**

**v.** **Case No. 4:25-cv-00939-KGB**

**COMMISSIONER,**
**SOCIAL SECURITY ADMINISTRATION** **DEFENDANT**

# ORDER

Before the Court is United States Magistrate Jerome T. Kearney's Recommended Disposition ("Recommendation") (Dkt. No. 17). Plaintiff Julie Freeman filed objections to the Recommendation and requested a *de novo* review of the record (Dkt. No. 18). After conducting a *de novo* review of the record, including the Recommendation and Freeman's objections, the Court adopts the Recommendation in its entirety as this Court's findings in all respects. The Court writes separately to address Freeman's objections.

## I. Background

Freeman filed an application for disability benefits on July 22, 2022 (Dkt. No 17, at 1). In Freeman's application, Freeman alleged that her disability began on June 1, 2022 (*Id.*, at 2). The application was denied initially and upon reconsideration (*Id.*). After conducting a hearing, an Administrative Law Judge ("ALJ") found that Freeman was not disabled (*Id.*). The Appeals Council denied Freeman's request for review of the hearing decision (*Id.*). The ALJ's decision now stands as the final decision of the Commissioner, and Freeman has requested judicial review of that decision.

At step one, the ALJ determined that Freeman engaged in substantial gainful activity from June 1, 2022, to July 15, 2022, but found that Freeman had a continuous 12-month period during

which Freeman did not engage in substantial gainful activity (*Id.*). Therefore, the ALJ proceeded to step two.

At step two, the ALJ found that Freeman has the following severe impairments: depression, anxiety, post-traumatic stress disorder, seizure disorder, and thrombocytopenia with myeloproliferative disease (Dkt. No. 6-2, at 20). Therefore, the ALJ proceeded to step three.

At step three, the ALJ determined that Freeman did not have an impairment or combination of impairments that met or medically equaled a listed impairment (*Id.*, at 20–22). Therefore, the ALJ proceeded to step four.

At step four, the ALJ found that Freeman had the residual functional capacity ("RFC") to perform work at the light exertional level with the following additional limitations: (1) Freeman should avoid even moderate exposure to hazards such as machinery with moving mechanical parts and unprotected heights; (2) Freeman can perform simple tasks with detailed but not complex instructions; (3) Freeman can occasionally interact with the public, coworkers, and supervisors; and (4) Freeman must work at a facility with a restroom and would need two additional unscheduled five-minute bathroom breaks during the workday due to side effects from medication (*Id.,* at 22). The ALJ also found that Freeman can occasionally lift 20 pounds, frequently lift 10 pounds, and—with normal breaks—sit for a total of six hours in an eight-hour workday and stand and/or walk for a total of six hours in an eight-hour walk day (*Id.*). The ALJ then determined that Freeman was unable to perform any past relevant work (*Id.,* at 33). The ALJ then proceeded to step five.

At step five, relying upon testimony from a vocational expert ("VE"), the ALJ found that, considering Freeman's age, education, work experience, and RFC, jobs existed in significant

numbers in the national economy that Freeman could perform (*Id.*, at 32–34). Therefore, the ALJ concluded that Freeman was not disabled (*Id.*, at 34).

After reviewing the evidence, Judge Kearney entered his Recommendation, recommending that the Court affirm the ALJ's decision and enter judgment in favor of the Commissioner (Dkt. No. 17). Freeman objected (Dkt. No. 18).

Freeman specifically objects on two grounds: (1) the Recommendation wrongly approves an RFC which rests on an inaccurate description by the only examining source; and (2) the Recommendation wrongly approves the ALJ's evaluation of opinion evidence because the ALJ never addressed Dr. David Oberlander's documented fatigue and relied on a state agency opinion that predated Freeman's decline (*Id.*).

## II. Legal Framework

A person's disabled status under the Social Security Act is considered using a five-step sequential analysis: (1) if the individual is doing substantial gainful activity, he will not be found to be disabled; (2) if the individual does not have either a severe medically determinable physical or mental impairment that meets a duration requirement or a combination of severe impairments meeting a duration requirement, he will not be found to be disabled; (3) if the individual's severe impairment meets or equals a listed impairment, he will be found to be disabled; (4) if the individual can still do his past relevant work, he will not be found to be disabled; and (5) if, based on the individual's residual functional capacity, age, education, and work experience, the individual can make an adjustment to other work, he will not be found to be disabled. 20 C.F.R. § 404.1520(a)–(g); 20 C.F.R. § 416.920(a)–(g). If a claimant's impairment does not meet or equal a listed impairment at step three, the ALJ must determine a claimant's residual functional capacity

which will be used in step four and five. 20 C.F.R. § 404.1520(e); *see also* SSR 96-8P, 1996 WL 374184 (July 2, 1996).

In reviewing an ALJ's decision, the Court examines "whether it is supported by substantial evidence on the record as a whole and whether the ALJ made any legal errors." *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016). The factual findings by the Commissioner are conclusive, so long as they are supported by substantial evidence. 42 U.S.C. § 405(g); *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). Substantial evidence in this context means less than a preponderance but more than a scintilla. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). In other words, it is enough that "a reasonable mind would find it adequate to support the [Commissioner's] decision." *Id.* (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). In assessing whether substantial evidence exists, the Court considers evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993). The Court cannot reverse the Commissioner's decision merely because substantial evidence may also support an opposite conclusion. *Slusser*, 557 F.3d, at 925.

## III. Discussion

### A. First Objection

First, Freeman objects that the Recommendation approves an RFC which rests on a reason not supported by the record (Dkt. No. 18, at 1). Specifically, Freeman argues that: (1) the ALJ's finding—that Freeman can stand or walk for six hours—is contradicted by the findings of a medical professional who examined Freeman's physical functioning; and (2) while the ALJ explained that she did not find the medical professional's opinion persuasive, the ALJ's reasoning for discounting the opinion was not supported by the record (*Id.*, at 3–4).

On October 26, 2023, a medical examiner examined Freeman (Dkt. No. 6-2, at 29). The examiner found that Freeman had swelling in her left foot and ankle, decreased range of motion, numbness in the right lower extremity, and other conditions (*Id.*). The ALJ considered the medical examiner's record in her decision (*Id.*). The ALJ found, however, that the medical examiner's opinion was not persuasive because the medical examiner's limitations "appear to be based on the claimant's subjective complaints as they are not supported by the consultative examination which revealed that the claimant had a steady gait, 5.5 muscle strength and normal sensation in her extremities" (*Id.*, at 30). The ALJ also explained that "[t]he only objective abnormalities noted on the exam were reduced range of motion in her spine and left knee," and that the "limitations are not consistent with the records which indicate that the vast majority of the claimant's physical examinations revealed no abnormalities" (*Id.*).

Although Freeman contends that the ALJ omitted the medical findings regarding balance and stability in the medical examiner's report from the ALJ's analysis, the record indicates that the ALJ considered the medical examiner's report and explained why the medical examiner's report was not supported by the medical evidence as a whole (Dkt. No. 6, at 36). Therefore, the ALJ did not improperly discount the medical examiner's report. *See Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) (holding that an ALJ should ordinarily give substantial weight to a treating physician's opinion, but if the opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight) (internal citations omitted). The ALJ's decision to discount the medical examiner's report is properly explained, and the ALJ's finding that Freeman could stand or walk for up to six hours a day is supported by substantial evidence, as explained in the ALJ's decision. Freeman's first objection is without merit.

**B. Second Objection**

Second, Freeman objects that the Recommendation wrongly approves of the ALJ's evaluation of the opinion evidence (Dkt. No. 18, at 6). Specifically, Freeman alleges that: (1) the ALJ did not address Freeman's fatigue that Dr. Oberlander documented; and (2) the ALJ relied on opinion from a state agency which relied on outdated information (Dkt. No. 18, at 6).

An ALJ is required to evaluate:

> the persuasiveness of medical opinions by considering (1) whether they are supported by objective medical evidence, (2) whether they are consistent with other medical sources, (3) the relationship that the source has with the claimant, (4) the source's specialization, and (5) any other relevant factors.

*Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)). However, "[t]he first two factors—supportability and consistency—are the most important." *Id*. (citing 20 C.F.R. § 404.1520c(a)). Pursuant to the regulations, "treating physicians are [no longer] entitled to special deference." *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(a)). Statements that suggest a claimant is disabled are not medical opinions, and the determination of disability is an issue reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1513(a)(2), 404.1520b(c)(3)(i).

Freeman's first contention is that the ALJ improperly discounted Dr. Oberlander's opinion about Freeman. Freeman contends that the ALJ's reason for discounting Dr. Oberlander's opinion—other findings in the record—was not tied to the fatigue from which Dr. Oberlander said Freeman suffered (Dkt. No. 18, at 6–7).

Dr. Oberlander treated Freeman for her seizure disorder (Dkt. No. 6-10, at 99). Dr. Oberlander documented that Freeman had "severe daytime sleepiness" with "excessive fatigue" and a "marked decline in energy level since her cancer diagnosis," for which he prescribed Provigil, a wakefulness medication (*Id.*, at 102). In assessing Dr. Oberlander's report, the ALJ stated that Dr. Oberlander "noted she also had severe fatigue with excessive daytime sleepiness"

(Dkt. No. 6-2, at 30). The ALJ then stated that Dr. Oberlander's treatment records did not support Dr. Oberlander's conclusion that Freeman was disabled (*Id.*). The ALJ explained that the record indicated that Dr. Oberlander's report—along with those of other medical professionals—indicated that: (1) Freeman had normal neurological evaluations; (2) Freeman's mental symptoms were improving with medication and management; and (3) Freeman had reported that she was doing well (*Id.*).

The Court disagrees that the ALJ improperly evaluated Dr. Oberlander's opinion. The ALJ specifically noted in her consideration of Dr. Oberlander's opinion that Dr. Oberlander found Freeman to have "severe fatigue with excessive daytime sleepiness" (*Id.*). The ALJ discounted that finding because of the contrary evidence showing that "her mental symptoms were improving with medication and management resulting in the claimant reporting she was doing well." (*Id.*). Clearly, the ALJ considered Freeman's fatigue and the medication that Freeman was receiving as part of the medical evidence as a whole, and the ALJ accorded Dr. Oberlander's opinion less weight. Nothing more is required. *See Edwards*, 314 F.3d at 967.

Freeman's second contention in support of her second objection is that: (1) after the medical examiners provided their report about Freeman's condition, additional mental health evidence emerged; (2) the ALJ failed to explain properly why this additional mental health evidence did not undermine the medical examiners' findings; (3) since the additional mental health evidence undermined the medical examiners' findings, and the ALJ failed to explain why the evidence did not undermine the medical examiners' findings, the medical examiners' findings cannot be substantial evidence which supports the ALJ's decision; and (4) the ALJ's finding—that Freeman could handle more than simple but less than complex tasks—is therefore not supported by substantial evidence and must be remanded (Dkt. No. 18, at 7–8).

On April 17, 2023, Dr. David Voss and Dr. William Harrison, state agency medical consultants, reviewed Freeman's medical record and found that Freeman retained the mental capacity for work related activities that involve more than simple tasks but less than complex duties with limited social demands (Dkt. No. 6-2, at 30–31). Dr. Voss and Dr. Harrison did not examine Freeman themselves, but instead they cited specific evidence in the record to support their conclusions (*Id.* at 31). In the ALJ's decision, the ALJ recited these facts, then stated that the ALJ "finds that new and material evidence has been added to the case record since the state agency medical examiners' determinations as well as hearing testimony" (*Id.*). However, the ALJ then concluded that "this evidence would not alter the state agency medical examiners' findings" and considered the state agency medical consultants' findings persuasive (*Id.*).

Contrary to Freeman's assertion that the ALJ only provided one conclusory sentence as to why the subsequent mental health evidence did not alter the state agency medical consultants' findings, the ALJ specifically stated that her determination of the value of the state agency medical consultants' opinion was "[b]ased on the reasons set out below" (*Id.*, at 31). The ALJ then explained that:

> the records indicate that the claimant has increased anxiety and depression . . . . As she addressed these issues in therapy and with medication, she reported improvements in her symptoms. . . . Additionally, the claimant performs concentration related activities such as watching television, listening to audio books, painting and fishing.

(*Id.*, at 32). The ALJ cited to several portions of the record—including the report documenting Freeman's new mental health struggles—to support her finding (*Id.*).

As the ALJ acknowledged, Freeman complained of additional mental health struggles to a medical professional after the date of the state agency medical consultants' report (Dkt. No. 6-8, at 304). However, after that complaint—but before the ALJ assessed the record—Freeman was again seen by a medical professional who reported that Freeman stated that "things have been

actually really good" (Dkt. No. 6-9, at 62). Freeman further explained that "[h]er daytime energy levels have improved. She is becoming more active and motivated. She is not lying in the bed all day. She has been doing spring cleaning around her house. Her appetite has been good." (*Id.*). Freeman also reported that her anxiety had become more manageable and that she had been fishing and camping lately (*Id.*). The ALJ cited specifically to both of these reports as evidence that Freeman's subsequent mental health changes reported after the state agency medical consultants' report would not have altered the state agency medical consultants' findings as to Freeman's ability to do simple or complex tasks.

In other words, the ALJ explained that the evidence related to Freeman's mental health—which developed after the state agency medical consultants' report—did not alter the persuasiveness of the medical examiner's report because, after the report of additional mental health struggles, Freeman reported that she had addressed the issues and reported improvements in her symptoms (Dkt No. 6-2, at 32). The ALJ properly explained why the subsequent mental health reports did not change the persuasiveness of state agency medical consultants' report, the ALJ's use of the state agency medical consultants' report was proper, and the ALJ's decision was supported by substantial evidence. Therefore, Freeman's second objection is without merit.

## IV. Conclusion

For the foregoing reasons, the Court:

(1) adopts the Recommendation in its entirety (Dkt. No. 17); and

(2) affirms the final decision of the Commissioner.

It is so ordered this 25th day of September, 2026.

Kristine G. Baker
Kristine G. Baker
Chief United States District Judge